for the appellant, Mr. Craven? Young Mr. Craven. Young Mr. Craven. Welcome to the young Mr. Craven. I personally for decades have enjoyed the experience of hearing from old Mr. Craven and we look forward to hearing from you as well. And for the appellee? We have children, Your Honor. Okay, young Mr. Craven, you may proceed. Thank you, Your Honor, and may it please the Court, I'll do my best to do an elder Mr. Craven impression. The Springfield Airport Authority is appealing the lower Court's decision, asking this Court to reverse that decision, finding that the village of Chatham is entitled to an additional commissioner to be appointed on the Springfield Airport Authority's board. The plain language of the Airport Authorities Act demonstrates that in order for a municipality to appoint a commissioner, such municipality must both be wholly within the authority and have 5,000 residents. Both elements are essential to seek the requested relief, and the village's petition demonstrates it does not meet that first element. For those reasons, we ask this Court to reverse the lower Court's decision. The plain language of the Act in both Section 3.13. Counsel, could I just ask you to address jurisdiction? Absolutely. First, we had a notice of appeal filed well after 30 days from the summary judgment order. Why is that timely? The Court, upon the village's, excuse me, Your Honor, after the summary judgment hearing, there was an order entered, and I believe our notice of appeal references both that order and a subsequent order that was entered upon the village of Chatham's motion, seeking further relief on that order. That order clarified that first order entered stating an additional commissioner should be appointed, but left out several essential elements that the statute touches upon that the order required. It didn't grant all the relief that was requested, that first order? Correct. So those issues were pending? Correct. Thank you. And in that second order, clarified who was to make the appointment, how they were to make the appointment, and I believe it touched on the terms. I apologize for not having that order in front of me, but it addressed further issues that remained pending after that first hearing in order. That order, both orders, were based upon the village of Chatham's petition, seeking relief under 3.1 subsection C of the Act. That's the lone subsection specifically at issue that states should a municipality wholly within an authority attain a population of 5,000 or more, then that municipality may apply to have an additional commissioner be appointed. Counsel, if I may interrupt just for a moment as you were quoting that statute, that statute goes on to read of 5,000 or more after the entry of said order by the circuit court. Yes. Can you explain to me which order that is referencing? Absolutely, Your Honor, and that's a very important question because that order is referenced not in the earlier parts of 3.1, but in earlier sections of the Act. To go back in time, the creation of an airport authority, the first few sections of the Act touch on how that is to be done. I apologize in advance, this seems like a long-winded answer, but I promise to get back to your question. It's a long-winded statute. Yes. Section 2.1 addresses the first steps in petitioning a circuit court to create an airport authority. That petition is supposed to provide a proposed name for the airport, provide proposed boundaries, and also list the municipalities within those proposed boundaries. Section 2 touches on the procedure the circuit court is to follow after that petition is filed. It, in fact, opens by stating the circuit court is to, upon hearing, may pass on that hearing from time to time if it determines, upon looking at the boundaries and the municipalities listed, that those municipalities are not wholly within the proposed boundaries. Section 2.1 does not even demonstrate a municipality is only partially within. It states they shall amend their petition to either include or exclude said municipality. From the onset, a petition before the circuit court, in order to proceed to a referendum, must include a municipality either wholly within or leave the municipality out. There's no other option. Not only must the petitioner, does the statute impose that duty on the petitioner, it goes on to state that the circuit court shall do so. Should the circuit court now deem such a petition that only partially includes a municipality insufficient, meaning it won't proceed to referendum, it won't proceed for the electorate to decide if an authority should be created or not. The electorate only determines if an airport authority should be created if the circuit court determines the proposed boundaries wholly include a municipality. It's not a requirement that a municipality be included. You only need 500 individuals or more. But if you include a municipality, it has to be wholly within. Then, we're getting closer to the answer, I promise. Section 3 tells us if the circuit court makes that determination, if it goes to a referendum and the electorate determined by a majority vote that an airport authority should be created, now the circuit court enters an order. Not only do they certify the election results, Section 3 of the Act asks that they, in that order, certify the results, determine the population of the authority, and certify the population of each municipality within the authority having a population of 5,000 or more. So in that order, creating an authority, if there's a municipality, it must be wholly within, or else it wouldn't have been included in the referendum establishing the authority. And we have an order recognizing which municipalities have 5,000 or more inhabitants. That brings us finally back to Section 3.1, stating that if that order is entered, establishing an authority, legal, we'll call it the origin order, the original order, yes, the origin order, that order establishes that a board of commissioners is the overseeing authority of the airport authority. And depending on the makeup of that authority's population, the board is made up in one of several ways. The General Assembly created several different ifs, ands, or buts, if you will. 3.11 states in the case that there are one or more municipalities, again, which had to be wholly within for the referendum, if they have a population of 5,000 or more, the board is made up in one of these various ways. If there's only one, there's a roadmap. If there's two or more, there's a roadmap for there. It goes on to state that who appoints which commissioner. If there's municipalities, the presiding officer of the municipality does. If there's no municipality, then the county officials do. Or if there's both, one or more of each, depending on the various subsections throughout. It also addresses in subsection 3.1 sub 2, what happens if there's no municipalities having 5,000 or more? Then it lays out who's on the board of commissioners and who makes those appointments. We then really finally get back to 3.13, where the General Assembly has made a recognition that times change. Municipalities grow. Sometimes they shrink. But should a municipality, which is wholly within an authority, attain a population of 5,000 or more after that origin order, they can ask the circuit court to be put in the same position, the original municipalities, having been appointed to the board of commissioners, the exact same spot. They have to prove in their petition to the circuit court that they're in that same position. Similarly, they have to prove they are wholly within, and they have to prove that they have 5,000 or more inhabitants. It is not enough, like the Village of Chatham's petition alleges, to have 5,000 residents within, but the municipality itself must be wholly within. Ignoring that word, wholly, wholly within, violates basic principles of statutory construction. This court's well aware in interpreting statute, words are to be given meaning. We cannot write words out of the statute to make them superfluous or meaningless. Let me ask you a question. This is all new to me, and I'm looking for some clarification here. I'm looking for section 3.13. It talks about, it's an introductory clause, speaks about a municipality which is wholly within an authority. Should it attain, should a municipality be established having a population of 5,000 or more, after the interview is said and ordered by the court, I guess that's establishing the airport. That's the origin order as we've defined it today, yes. Then it says, the presiding officer of such a municipality may petition the circuit court for an order finding and determining the population of such a municipality. It was found determined in the hearing that since the population is 5,000 more, the board of commissioners shall be increased. Why isn't there in that language, referring to the wholly within, the authority? Why doesn't it say, the presiding officer of such a municipality may petition the circuit court for an order finding and determining, one, that the municipality is wholly within an authority, and two, that the population of such a municipality is 5,000 or more. I would argue, Your Honor, that it is included in there, not explicitly, but implicitly, when it says, the presiding officer of such a municipality. Such a municipality, indicating to look back earlier in the statute, that it's either a municipality wholly within the authority, or a new municipality that's been established. One of those two municipalities may make the petition. If it's another municipality, they wouldn't have standing to make that request. The statute states, such municipality, not just a municipality. And so while it's not expressly written, as we've recognized, this is a very long-winded statute, but this is the way the General Assembly's written it. Such municipality indicates that it is only a limited set of municipalities. We need better personnel in the legislative reference, Your Honor. That's the answer. Go ahead. But by including such municipality, it's indicating there's only a limited amount of municipalities that may make this petition. Not all municipalities throughout the state. And the such municipality, or the two types of such municipalities, are laid out in the first sentence of Subsection 3. Yes, and with the loan clarification, I think it's just one big, long sentence. But yes, the two municipalities that may make the request are either one that is within the authority that attains 5,000, or a newly established authority. Is there any way to construe the statute where those who are onboarded in the origin order are treated differently than those who come onboard later? Are the requirements different for them? By those, by saying those, do you mean inhabitants or municipalities? The municipalities. Yeah, the municipalities. Are we going to say that the rules were different if you came in early, or are they the same? Do you have to be wholly within a population of 5,000 or more? I would say that to say you don't have to be a municipality wholly within ignores Sections 2.1, 2.2, 3, and 3.1. But there's no other, you know, we're not grandfathering in somebody who doesn't meet that. Correct. There's nothing in the statute implying that authority exists. Okay. Is there any dispute in the record that Chatham is not wholly within the Supreme Court authority? The sole facts, if you will, in this case are that the village of Chatham, in its petition, alleges it has approximately 14,300 residents, inhabitants. And of that, approximately 5,500 also reside within the airport authority. So the municipal boundaries of Chatham don't... Are not concurrent with the airport. Okay, not all. Some, but not all. 5,500 overlap, 8,500 are necessary. The question is, what does this language wholly within authority mean? Correct. The position is... That wholly means wholly. Wholly means wholly. The territorial requirements, they only ratchet one way, right? Correct. So at the time of petition, or at the time of the origin order, what were you at that time is determinative. But a municipality could grow outside of the district afterwards, and there's no penalty for that. Correct. Is that a problem that different districts are treated differently in terms of representation, different municipalities are treated differently in terms of representation on the board because of when they grew? I would say no, Your Honor. And that simply goes back to the concept of everyone within the authority, whether you're within a municipality or not, still has representation of some sort on the board. The Village of Chatham brief, I believe, addresses on the public policy concept of whether or not individuals, these 5,500 that are within the authority, whether or not they deserve representation. But the Act provides them representation from the at-large counties. Yeah, but that answers every question, right? That's too easy an answer. So why is it reasonable that the legislature would say, if you were wholly within at the time of the originating order when that snapshot was taken, you can go now and grow outside of the district. But somebody who is currently growing outside of the district is ineligible. That seems to treat them differently. And I would say that it's simply two different procedures that we're looking at. First is eligibility to have a commissioner on the board of commissioners. Second, there's an annexation procedure for the airport authority, under the Airport Authorities Act, to annex more land, whether it be in a municipality or out of a municipality. There are, in fact, three different annexation procedures. Similarly, there are annexation procedures under the municipal code. Right, so let's say Chatham qualified, was wholly within. But then it went out and annexed a lot of territory outside of the airport authority. Well, that's just the way it goes. So the rule doesn't mean anything as long as you get your eligibility established kind of at the front end. And I think that's a prerequisite at the front end. But it may not last.  And there's nothing in 3.1 indicating that any newly annexed territory must also be annexed into the airport authority. Nor is there anything saying now that you've annexed outside, you're out. Correct. And we're okay with that? I would say so, yes, Your Honor. That's the language the General Assembly has put before us. And to the extent we may arm wrestle whether or not that is right, that is what's in the statute. It's a political judgment. Yes. And we're here interpreting the language of the statute that those political officers have put forth. And the decision they made is that to establish a commissioner by a municipality, you shall be wholly within before you're able to do that. Then you can grow, which I think the General Assembly would also prefer for municipalities to continue to grow and thrive. There shouldn't be a decommissioning at that point. But 3.1 and in reading the act as a whole, which the tenants of statutory construction asked us to do, look at the whole act, not just this one specific subsection, that to have a commissioner be appointed by a municipality, you have to be wholly within and have at least 5,000 residents. There are other municipalities within the Springfield Airport Authority that meet the other qualification of being wholly within, but don't have 5,000 residents. Jurisdictional map shows that Grandview, Southern View, Leland Grove are wholly within the authority, but they don't have 5,000 residents. The Village of Chatham's interpretation is essentially you can have one or the other and that's enough, but the General Assembly has made the decision you need to have both, and that's what this court is bound to follow, is what they've put forth. It's an A and B, not an A or B. The plain language of Section 3.13 demonstrates you have to be wholly within. Reading the act as a whole demonstrates that you have to be wholly within, and there's no other interpretation demonstrating otherwise. The circuit court's order ignored the requirement that an authority be wholly within, and it's for those reasons we ask this court to reverse the circuit court's order. Thank you, counsel. Thank you. Ms. Petrilli, is that pronounced correctly? Yes, it's pronounced correctly. You may argue at this time. Thank you. May it please the court, as indicated, my name is Lisa Petrilli. I am with the firm of Sorley Northrup, and I appear before you on behalf of the Village of Chatham. The village is requesting that this court affirm the orders entered by the circuit court on January 26, 2024, and August 12, 2024. In those orders, the Village of Chatham requested and the circuit court allowed or permitted the village to appoint a commissioner to the Springfield Airport Authority, having found that the Village of Chatham has at least more than 5,000 of its residents that reside within the boundaries of the airport authority. As indicated by counsel, this section of the Airport Authorities Act relied upon was section 3.13. 3.13 provides that should a municipality which is wholly within the authority or should such a municipality be established as having a population of 5,000 or more after the entry of said... Okay, now I've got to stop you.  So, as I see it, there are three operative clauses that deal with this issue. The first one is, should a municipality which is wholly within an authority attain, the next clause would be, or should such a municipality be established. And the third clause is, having a population of 5,000 or more after the entry of said order by the circuit court. You're reading it as though two and three are one together and not related to the first clause. So, and we're reading it that way because there is the disjunctive or. It does not say and. So, in this instance, it's either or. So, while they are read in the same sentence, they're read disjunctively. So, what does attain? Tell me when we talk about, should a municipality which is wholly within the authority attain? What would it be attaining? So, it would be attaining a population of 5,000 or more. Which means that the third clause applies to both sections, not just the second. So, isn't such municipality in that second clause? Or should such a municipality be established? What does such a municipality mean? Or should a municipality that is within the authority, should that be established as having and then the way we read it. Wholly within. Well, wholly is not within that, the other side of that section. But what does such a municipality mean? Well, if, so such a municipality meaning a municipality within the airport authority. So, that's, wouldn't it be natural to say that when the first clause talks about a municipality wholly within an authority. And then it says, or should such a municipality be established? Isn't the logical reading of that, that such a municipality means a municipality wholly within the authority? Well, the problem with reading it that way is that it makes both sides of those essentially mean the same thing. Meaning the only, the only, the only time that there could be representation on the board is a municipality that is wholly within and has 5,000 people. Well, that's what the legislature seems to have required. Well, then what's the purpose for the or then? Because it's either an old one that just grew 5,000 or it's a new established municipality that has 5,000. That's the or. If you look back though at the beginning of that section 3.1, it does speak of, and it was amended to include this, it speaks of municipalities having 5,000 or more residents which are within the airport authority. It does not have the word wholly within that, within the beginning part of section 3.1. It speaks of allowing a member, a commissioner to be appointed where the municipality has more than 5,000 people that are within the airport authority district. It does not include, it does not state wholly. Aren't we dealing from a subset of wholly within? I mean, we're not just talking about any municipality. We're talking about wholly within. That's, we can't start at 3.1. We have to look at all of the municipalities that have come through the door have had to meet that requirement of being wholly within. Well, see, perhaps before, but this section was added by the legislature after. It is not part of the original or the originating statute. No, it's sort of an interim thing, right? It changed some of the makeup and some of the way the board was being filled in a broad sweep. But it's, it also acted at one time. It did in the beginning part of this, yes. And in that portion of it, it didn't require that those municipalities be wholly within the airport authority. If you look at section 3.1. It also, if you look further down in that section where it talks about how the commissioners are appointed and who may be appointed, it contemplates in 3.1 that there may be a commissioner that's been appointed to represent a municipality who then moves out of the municipality but still lives within the district and whether or not that commissioner would qualify. So even within section 3.1, it's contemplated by the legislature that there may be an instance where there is a commissioner who is appointed and is from a municipality that isn't wholly within the airport authority, such that if the commissioner moves out of the authority but remains in the district, whether or not that position is in fact vacated. And I think some of that happened, I want to say, in 06 or 07. That's correct. And so it was dealing with a pre-established group of municipalities already. It re-racked how those were going to be selected. But that's not the section you're proceeding under. I mean, you might make an argument that had we had our picture taken back in 2006, 2007, we would have qualified. But that's not what the argument is. The argument is we qualified now under a statute that does say wholly within. It does for a portion of it. But the problem with that then is that it ignores the intent of the legislature here, which we think is clear to provide representation on this board to the municipalities. So if I can serve you back to the question that I asked. Plans Council, when we look at Section 3.1 and we talk about the entry of said order, for us to find that as in the origin order, if you will, do you agree with that? No, I don't believe that it is clear within this section that that is the order. What order is it referring to then? So in this instance, we would posit to this court that the intent was that either there be a municipality that is wholly within the district and has 5,000 or it's established by order of the court, as in this instance, that the municipality has 5,000 or more that reside within the district. But that's circular, right? Because it can't be the order in this case. The order in this case comes at the end of this case. So it can't be that there's been 5,000 people added since the end of the case. We have to enter the order before the end of the case or at the end of the case. So it has to be referring back to one of those original establishments, either the one back in the 90s or the one in the middle of the 2000s. Well, even if it refers back to that order, since that time, the village does now have more than 5,000 people that are within the district. So that becomes after we did it. It attained that. So the statute leaves the door open to that village coming in because it attained 5,000. That doesn't change the fact that the first sentence says wholly within. And so with regard to that, we think that the intent of the legislature meant that a village that has 5,000 people in it where, say, 2,000 reside within the district and the other 3,000 are outside of it, that it was not intended that that entity then have the ability to appoint a commissioner to this board. Don't we determine the legislature's intent first and foremost from the words it uses? And what does wholly within mean if not wholly within? So in this instance, we would argue that wholly within means that there are 5,000 people that are wholly within the district. Additionally, if you go back to the beginning of the 3.1... But the wholly within doesn't talk about the people. It talks about the municipality. So we know that means the territory, the geography. How are we supposed to accept your interpretation without lining out the word wholly? Well, I think, again, if you go back... I mean, our position originally is that there are two avenues, essentially two instances where a commissioner may be appointed. The wholly within and having 5,000 together. And the instance where it's determined at a later point that there are 5,000 that are within. I can see two avenues from where I sit. And what matters is whether you've got a green light on your avenue. Your avenue is 3.13. I don't see a green light on 3.13. Understood. We believe that the public policy behind the additions that the legislature made in 2005 and 2006 support allowing and providing for representation of two municipalities that have 5,000 or more within the airport authority district. And that the intent was to allow that representation. And if you require that the municipality be entirely encapsulated within the airport authority and achieve 5,000, it doesn't necessarily allow for growth or at least allows for maneuvering that defeats the purpose of the statute, which was to provide representation to those entities with the legislature believing that once a municipality attained 5,000, that that was enough people that would entitle them to representation on this board. Do you agree that under Section 2 and Section 3, as argued by counsel, that when the original membership, shall we say, was settled, that they had to meet the wholly within requirement? That's correct. They did. So you want a requirement that's different for you, more forgiving for you, than for those who originally came on board. And we think that by the additions to Section 3.1, that that's what the legislature intended. Didn't that also add 3.13? Wasn't that also added by the same legislation? It was. So what do we make of that? That's where the wholly within is restated. Although not in the previous part of 3.1 and not after the destructive war. And so, again, obviously our interpretation and what we posit to this court is different than this court's interpretation. But that is our position and why we are here today asking that this court affirm the orders of the circuit court and allow for the representation on the airport authority. Thank you, counsel. Thank you. Mr. Craven, any rebuttals, sir? Just briefly. Okay. And may it please the court that I promise I will be brief. Just basic principles of statutory construction call for this court not to read words in isolation, not to read phrases in isolation, not to read subsections in isolation, but to read whole acts in the whole, just that. We are to interpret words and phrases under the General Assembly's verbiage, give them meaning, and look at them not in isolation but in the whole. The village's interpretation is asking you, number one, to ignore words within 3.13 and ignore the rest of the act setting forth what 3.13 should mean. I'll turn that back to you. And I know that there's some ears burning across the street. Why didn't they use whole in the other sections of 3.1? And by other sections, you mean the opening sections? 3.11, 3.12, right? Because I wasn't in the room, couldn't tell you why. But my assumption is, based off the way these statutes were originally written, we've heard discussion about how they were originally, this language doesn't exist. The Greater Rockford Airport Authority, the case from the 2nd District, addresses how on page 54 of that opinion, the statute in its original form, when the Greater Rockford Airport Authority was organized, the court recognized that it was conceded Rockford was the only city within the original airport authority having a population of 5,000 or more. But in the meantime, the city of Loves Park was situated in the limits of the authority. It reached a population of 5,000 or more, and, quote, to remedy such a situation, paragraph 5 was added to section 68.3, the former reference to that, stating, creating this section 3.1 sub c. It used to be included within what is now subsection 3, referencing the order, Your Honor referenced that section 3.13 does reference, after the entry of said order by the circuit court. While this long-disjointed statute is even now more disjointed, it used to be all in the whole. It didn't need to be duplicative and state wholly within at the beginning of 3.1 because the original order, the origin order, establishing the boundaries of a proposed airport authority, demonstrated those municipalities had to be within those proposed boundaries. Why then did it mention having a population of 5,000 within the authority? Because by your same logic, that had already been established at the front end. With all due respect, it was not established, Your Honor. The original petition doesn't require a municipality to have 5,000 inhabitants to be included in the origin petition. It only requires 500 individuals file a petition, and if they include a municipality, such municipality has to be wholly within. It doesn't require 5,000 individuals. Only 500 people have to file the petition. Right, but in terms of getting in play for a board membership appointment, they needed 5,000. Under Section 3, which is after the petition has been certified by the court and sent out for reference. So if that's true, why mention it again in 3.11? Because otherwise it would create a situation where for fairness and equity, that an individual municipality should have to meet the same standards, the origin order municipalities met, meaning both standards be wholly within. What I'm just asking is why did they restate one of those two but not the other? In 3.11. In 3.11 where? 3.11 says in case there are one or more municipalities, doesn't say wholly within, having a population of 5,000 or more within the authority. If we're saying the two main requirements were already sort of checked the box earlier, why are we mentioning just one of those two? And I wish I could say why they chose that there, but for the same reasons that in 3.13, rather than repeating themselves, they choose to say such a municipality. After stating it first though. Correct. But in the totality, 3.1 immediately follows, 3 and 2.2, which establish those municipalities must be wholly within. But it's for these totality of the circumstances, Your Honor, that we respectfully request the lower court's order to be reversed. Thank you, counsel. Thank you, Your Honor. This court will take the stand on the advisory stand and recess.